(*Criminal Court of Cook County.*)

### People

### vs.

### J. J. Walser.

(Sept. 23, 1878.)

1. CONSTITUTIONAL LAW—VALIDITY OF ACT OF APRIL 9, 1875, PROHIB-
ITING SALES OF RAILROAD TICKETS BY UNAUTHORIZED PERSONS.
The act of April 9, 1875, entitled "An act to prevent frauds upon
travelers and owner or owners of any railroad, steamboat, or

other conveyances of passengers" is constitutional and valid, being a matter of mere police regulation of a public business, and the subject matter of the act is sufficiently expressed by the title of the act.

2. POLICE REGULATIONS OF RAILROAD COMPANIES, NATURE AND EXTENT OF. The business of railroad companies and all its common incidents are proper subjects of the police power and the nature and character of the police regulations must be determined by the legislative and not the judicial branch of the government.

3. INDICTMENT FOR VIOLATION OF ACT OF APRIL 9, 1875. The defendant was indicted for violation of the act of April 9, 1875. Upon motion to quash the indictment on the grounds that the act was unconstitutional and was not constitutionally passed, *held*, *overruling the motion*, that the act was constitutional, and that in the absence of competent evidence the question as to the passage of the act in compliance with the requirements of the constitution could not be considered.

Indictment for violation of act of April 9, 1875. Heard upon motion to quash before Judges W. K. McAllister and S. M. Moore. Opinion by Judge McAllister. The facts are stated in the opinion of the court.

McALLISTER, J. (MOORE, J., concurring) :—

This is an indictment under the act of April 9, 1875, entitled "An act to prevent frauds upon travelers and owner or owners of any railroad, steamboat, or other conveyance of passengers." Motion is made to quash the indictment on two grounds: (1) That the act is not within the scope of the police power—is an unwarrantable restriction upon the rights of private property, and therefore, unconstitutional. (2) It was not constitutionally passed.

The act relates to the business of common carriers. It has been the settled law in England and in this country, that the business of a common carrier is not only affected with a public interest, but is a public employment. This proposition is so elementary that a multiplication of authorities is unnecessary. So far as relates to railroads acting under charters or acts of incorporation, their franchises are partly of a public and partly of a private nature. So far as the safety,

convenience and comfort of passengers are concerned, they are *"publici juris;"* so far as they relate to capital and the production of revenue, they are *"privati juris."* There never has been any question of the power of the state legislatures to pass laws in the nature of police regulations affecting the exercise of such franchises so far as they were *"publici juris"*— such as those designed to secure passengers from not only danger, but imposition. The hinging point in *Munn and Scott v. Illinois,* 94 U. S. 113, carried by writ of error to the United States supreme court from our supreme court, and taken into and decided by the former, was, whether the business of keeping a grain warehouse as a mere private enterprise was a public employment, so as to subject it to the police power which might extend to a full suppression of the business. By the common law it was not such public employment, nor was there any valid statute changing that law. But a majority of the United States supreme court diverting, as many think, from established legal principles, affixed to that business a character which the law of the state did not give to it more than to any other business, viz: That it was so affected with a public interest as to be entirely subject to the police power of the state.

But all good lawyers and all courts concede that, ever since the decision in *Coggs v. Bernard,* common carriers are recognized as being engaged in a public employment, and nothing can be clearer than that, in this state, railroad companies, so far at least as concerns the safety, comfort and convenience of passengers, are proper subjects of the police power. Of this there can be no question. If the business itself be subject to the police power, then so must all its incidents and accessories be subject to it. All experience teaches that the necessities of the business require the issuing and use of tickets. They are as necessary to the convenience of both traveler and carrier as baggage checks or waybill in case of freight. The business and all its common incidents being proper subjects of the police power, then it follows from settled principles that the nature and character of the police

regulations must be determined by the legislative, and not the judicial branch of the government. After giving this matter much consideration, we are of the opinion that the act in question, being a matter of mere police regualtion of a public business, is constitutional and valid. There may arise cases where the contract for carriage was made in another state, which constitutional principles would prevent falling within the range of this act, but that is no ground for holding the act void as to all cases.

The question was made that this act was not passed in compliance with the requirements of the constitution, and an unauthenticated paper, said to be a copy of the legislative journals, was put into our hands. We cannot act upon that question without evidence—competent evidence—to establish the facts upon which decision is to be made. We are also of opinion that the subject matter is sufficiently expressed by the title of the act. The motion is overruled.

This opinion having been read to Judge Moore, who sat with me at the hearing of the motion, he authorizes me to say that he concurs in the conclusions arrived at.

#### NOTE.

See the note to the case of *People ex rel. v. Pease* (in this volume) and the cases therein noted and reported in this volume holding the act in question unconstitutional and void.